**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **DEXAS INTERNATIONAL, LTD.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:07-cv-334** |
| | § | |
| **TUNG YUNG INTERNATIONAL, INC.,** | § | |
| **TUNG YUNG INTERNATIONAL, LTD.,** | § | |
| **and TUNG YUNG STATIONERY MANUFACTORY, LTD.,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the drawings provided in U.S. Patent Nos. D474,599 ("the '599 patent"), and D475,748 ("the '748 patent"). Plaintiff Dexas International, Ltd. accuses Defendants Tung Yung International (USA), Inc. and Tung Yung International, Ltd.[1] of infringing both these patents. In accordance with the Scheduling Conference held on October 27, 2007, and the Docket Control Order issued on October 30, 2007, the parties requested a Points of Novelty, Prior Art, and Functionality Hearing ("PPF Hearing"), which was held on June 11, 2008. At the hearing, the parties submitted competing claim construction proposals, and argued whether the Court should determine the points of novelty and functional elements of the two design patents at issue. For the reasons set forth herein, the Court hereby adopts the claim constructions below for

[1] There are currently three defendants named in this case, but only two are active entities – (1) Tung Yung International (USA), Inc., hereinafter referred to as "Tung Yung USA", and (2) Tung Yung International, Ltd., hereinafter referred to as "Tung Yung Ltd." As Tung Yung Ltd. agrees with the claim constructions submitted by Tung Yung USA and have jointly filed their Supplemental Claim Construction Brief, the Court will refer to both defendants as "Tung Yung." *See* TUNG YUNG SUPP. BRIEF AT 1 (DOC. NO. 103). The third defendant, Tung Yung Stationery Manufactory, Ltd., is the former name for Tung Yung Ltd, and no person or entity currently operates under the name of Tung Yung Stationery Manufactory, Ltd.

the '599 patent and the '748 patent.

## I. OVERVIEW OF THE PATENTS

The two patents involved in this case are design patents. The '599 patent, entitled "SLIM CASE," claims "[t]he ornamental design for a slim case, as shown and described." Seven (7) figures are provided, each showing a different view of the SLIM CASE.[2] DEXAS' OPENING BRIEF, EX. 1 (DOC. NO. 59-2). The '748 patent, entitled "CLIPCASE," similarly claims "[t]he ornamental design for a 'clipcase,' as shown and described." Seven (7) figures are also provided with seven different views of the CLIPCASE. DEXAS' OPENING BRIEF, EX. 2 (DOC. NO. 59-2). Both patents depict a storage container approximating the dimensions and appearance of a clipboard. The storage container opens to provide space for documents and other stationery tools. The SLIM CASE of the '599 patent does not have a clip to secure documents to its exterior surface, but features a cutout near the front of the board that presumably serves as a handle for carrying the object. The CLIPCASE of the '748 patent includes a clip to secure documents to its exterior surface, but does not feature a cutout that can serve as a handle.

## II. LEGAL STANDARD

A design patent is fundamentally different from a utility patent, but in some areas, the law pertaining to each overlaps. For example, although their respective tests for infringement are

---

[2] The Court will refer to specific pieces of a design, such as the front, back, side, top, and bottom, in accordance with the views that have been established by the two patents. For both patents, the views are described as follows:
Fig. 1 is a perspective view;
Fig. 2 is a front view;
Fig. 3 is a back view;
Fig. 4 is a side view;
Fig. 5 is a side view similar to Fig. 4 except rotated 180 degrees;
Fig. 6 is a top view; and
Fig. 7 is a bottom view.

different, both types of patents require a preliminary determination from the court that construes the scope and meaning of claims. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)).

A design patent protects the novel, non-functional aspects of a claimed ornamental design. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir.1993); *OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The bulk of the disclosure in a design patent are the drawings, which set forth the limits of the claim. Design patents are limited to what is depicted in the drawings and therefore have almost no scope. *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988).

Claim construction in the context of a design patent involves an "additional level of abstraction" that is not required when construing the claims of a utility patent. *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996). This abstraction is created by the lack of a written description that is present in a utility patent. *Id.* Furthermore, with design patents, the court is presented with only visual images of the claimed subject matter. *Id.* "Given the lack of a visual language, the trial court must first translate these visual descriptions into words – *i.e.*, into a common medium of communication." *Id.* In this regard, the scope of the claimed invention must include the "'overall ornamental visual impression [of the design], rather than . . . the broader general design concept . . . .'" *Contessa Food Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2000) (quoting *OddzOn Products, Inc.*, 122 F.3d at 1405). "When properly done, this verbal description should evoke the visual image of the design." *Durling*, 101 F.3d at 103 n.2.

Design patent claim construction is properly conducted through the eyes of the court, and

reference need not be made to an ordinary observer or a designer of ordinary skill. *Minka Lighting, Inc. v. Craftmade Intern, Inc.*, 93 Fed. Appx. 214, at *2 (Fed. Cir. Jan. 16, 2004) (unpublished opinion). Although case law does not prohibit a detailed claim construction for a design patent, a lengthy claim construction is not required. *Id.* ("The infringement analysis essentially involves comparing the drawings to an accused device; a verbal description of the drawings does not necessarily aid such a comparison."); *see also Durling*, 101 F.3d at 104 (rejecting a broad claim construction of a design patent claim because it focused on the general concept of the design rather than the design's visual appearance). However, "an extensive verbal claim construction may be helpful particularly if the drawings contain features that are not part of the patented design, *e.g.*, if the drawings contain functional features or if there is a point of novelty to consider." *Minka Lighting*, 93 Fed. Appx. 214, at *2 (citation omitted).

Ordinarily, functional aspects of a design cannot be claimed. *OddzOn Products, Inc.*, 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."). Functional design elements can be claimed, however, when they serve a primarily ornamental purpose, *e.g.,* in circumstances where there are several ways to achieve the underlying function. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). The determination of "[w]hether a patented design is functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

Much like the case with utility patents, it is proper for a court to look to the intrinsic record, *e.g.*, the prosecution history, when construing the claims of a design patent. *See Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (citing *Markman v. Westview Instruments,*

*Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995); *Goodyear Tire & Rubber, Co. v. Hercules Tire & Rubber, Co., Inc.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998)). One difference in claim construction law between utility patents and design patents, however, deals with the use of broken lines in the drawings of a design patent. "If features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the failure to do so signals inclusion of the features in the claimed design." *Contessa Food Products, Inc.*, 282 F.3d at 1378 (citing *Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001)).

## III. DISCUSSION

The parties have raised three (3) issues in their submissions to the Court and at the Points of Novelty, Prior Art, and Functionality Hearing ("PPF Hearing") on June 11, 2008. The parties dispute the proper claim construction for the two patents, whether the Court should determine the points of novelty for the patents, and whether the Court should determine the functional elements for the patents.

### A. Claim Construction

The parties do not dispute that claim construction is a legal determination exclusively within the province of the Court. The parties also agree that under current principles of design patent law, claim construction requires the Court to provide a written description of the drawings that evokes the overall visual appearance of the ornamental features for the claimed design. The parties do not agree, however, whether the written description should be detailed or general in nature.

#### 1. The '599 patent

Dexas favors a general description and proposes the following claim construction for the '599

patent:

> The scope of the design of the claimed Slimcase, shown in Figures 1 through 7, encompasses its visual appearance as a whole, and in particular the visual impression it creates, and comprises the following:
>
> 1. An ornamental design having an overall general appearance of an elongated rectangular slim case and having a top portion joined to a bottom portion.
> 2. The surface of the top portion being planar and not parallel to the surface of the bottom portion.
> 3. The top and bottom portions each having corners with a pair of small radii at one end and a pair of larger radii at an opposite end.
> 4. An opening with curved portions located through the planar surface of the top portion and the surface of the bottom portion, adjacent the ends of the top and bottom portions with the larger radii.
> 5. Repetitive patterns of multiple vertically positioned fins joining a horizontal fin above and below a line separating the top portion from the bottom portion on either side of a rectangular space on the ends of the top and bottom portions with the larger radii.

Joint Points of Novelty, Prior Art, and Functional Elements Chart ("Joint PPF Chart") at 38-41 (not docketed). Dexas argues that its proposed construction provides the proper overall visual impression of the ornamental features of the patented design. DEXAS' OPENING BRIEF AT 7 (citing *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996)).

Tung Yung, on the other hand, argues that Dexas' proposed construction is not sufficiently detailed because it fails to describe important features such as: (1) the fins being recessed and not protruding out from the edge, (2) the long sides of the generally-rectangular shape are parallel (straight) and not curved, and (3) the ornamental spacing of two short hinges instead of a single long hinge. TUNG YUNG'S BRIEF AT 8 (DOC. NO. 76). Tung Yung also contends that "[d]esign patents have almost no scope," and that a thorough textual description of the claim is appropriate when the patent sits in a crowded field of prior art, such that the claimed design must be distinguished from the prior art. TUNG YUNG'S SUPP. BRIEF AT 6-7 (DOC. NO. 103) (citing *In re Mann*, 861 F.2d 1581,

1582 (Fed. Cir. 1988); *Arminak & Associates, Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1320-21 (Fed. Cir. 2007) ("*Arminak II*")).

Tung Yung thus proposes the following claim construction for the '599 patent:

The ornamental design for a "SLIM CASE" containing:

1. A smooth, generally rectangular box having a back edge with two hinges, a front edge with a clasp, and two parallel longitudinal side edges orthogonal to the front hinge edge and the back clasp edge;
2. A top surface that is smooth, flat, and unadorned from the front clasp edge to the back hinge edge and between the two parallel longitudinal side edges, but for the elliptical handle opening;
3. An elliptical handle opening adjacent to the front clasp edge in which all sides of the opening are curved and not parallel to any of the four edges of the box;
4. A bottom surface that is smooth, flat, and unadorned from the front clasp edge to the back hinge edge and between the two parallel longitudinal side edges, but for the elliptical handle opening;
5. The bottom surface where on the front clasp edge, the clasp and two sets of three fins are inset into the curvature of the handle and do not protrude outward from the edge;
6. The bottom surface where no hinge is visible on the back hinge edge;
7. Two gradual curving corners connecting each of the two parallel longitudinal side edges to the front clasp edge;
8. The front clasp edge containing a clasp and two sets of fins that are inset into the edge and that do not protrude outward from the edge;
9. The front clasp edge having five distinct planes that are parallel to one another, with the middle plane protruding outward;
10. The clasp enclosed by two sets of three fins of equal size and length that are parallel to each other and that do not touch the top or bottom surfaces;
11. The clasp having three lines of equal size and length that extend to both ends of the clasp and that are parallel to each other and to the top and bottom surfaces;
12. The clasp and sets of fins positioned between two angled segments that separate the top half of the box from the bottom half;
13. Two hinges, each spaced apart from the other and each encased by four hinge members along the outside of the back hinge edge;
14. Eight hinge members with alternating upward and downward protrusions and indentations along the outside of the back hinge edge;
15. Two parallel fins that are located at equal spaced distances from the center and rising from the hinge members furthest from the center;

16. Each parallel longitudinal side edge being made up of three distinct planes, with the middle plane having parallel top and bottom borders and protruding outward, and with the top and bottom plane narrowing at an angled decline; and
17. An angled segment in the middle plane that is located near the back hinge edge and that separates the top and middle planes from the bottom plane.

Joint PPF Chart at 46-49.

It is clear that there is little in common between the parties' competing claim constructions. While Dexas' construction describes five aspects of the claimed design, the Court finds it to be incomplete and insufficient to evoke an overall visual impression of the design's appearance. The figures illustrated in the patent disclose additional visual components that are not addressed by Dexas' construction. Furthermore, Dexas' proposed claim construction strikes the Court as alarmingly similar to its proposed points of novelty. *See* Joint PPF Chart at 2-3. The Court therefore declines to adopt Dexas' construction as the construction of the Court.

On the other hand, Tung Yung's proposed construction takes the other extreme and attempts to meticulously describe each aspect of the patented design. In doing so, Tung Yung's proposal becomes confusing and needlessly technical, given that a potential juror can rely upon the figures illustrated in the patents for an accurate depiction of what is claimed.

Furthermore, Tung Yung's citations to Federal Circuit authority do not support its assertions. Tung Yung cites to *Arminak II* for the proposition that a design patent must be narrowly construed to distinguish it from a crowded field of prior art. *See* TUNG YUNG'S SUPP. BRIEF AT 6 (DOC. NOS. 103). *Arminak II* does not stand for this proposition. Instead, the court observed that where a crowded field of prior art exists, the point of novelty test should be narrowly applied to determine whether an accused design appropriates an asserted point of novelty. *Arminak & Associates, Inc.*

*v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324 (Fed. Cir. 2007) ("*Arminak II*") ("In applying the point of novelty test, a court compares the construed claims to the accused design to determine whether the accused design has 'appropriated' the points of novelty from the patented design. *See Litton*, 728 F.2d at 1444. Where the art in the field of a particular design is crowded, we must construe the range of equivalents narrowly.").

In addition, Tung Yung cites to *Arminak II* for its comment that "[o]ur case law does not prohibit detailed claim construction of design patent drawings." TUNG YUNG'S BRIEF AT 5 (DOC. NO. 76). However, Tung Yung fails to recognize that the Federal Circuit in that comment approved of the district court's detailed claim construction in light of the prosecution history available in that case, wherein the patentee disclaimed certain aspects of the patented design to distinguish it from the prior art.[3] Because the patented designs in this case lack such prosecution history, *Arminak II* is distinguishable. Accordingly, there is no basis to adopt a needlessly confusing claim construction. The Court rejects Tung Yung's proposed claim construction.

In light of the above discussion, the Court hereby adopts the following claim construction

---

[3] The Federal Circuit's complete discussion of proper claim construction in *Arminak II* is as follows:

> The district court in this case performed the requisite task of claim construction by describing each of the drawings of Figures 1 through 5 in each of the two Calmar patents-in-suit. In doing so, the district court was careful to point out that the patented design did not include the nozzle, trigger, or closure cap. The district court also carefully noted that, to overcome the PTO's earlier rejection of the '581 patent application as not patentably distinct from the preceding Calmar '602 patent and to obtain the PTO's issuance of the '581 patent on July 29, 1997, Calmar filed a terminal disclaimer under 37 C.F.R. § 1.321(b). Calmar's disagreement with the district court's claim construction is essentially that it was too detailed. Our case law does not prohibit detailed claim construction of design patent drawings. It merely disapproves claim construction that goes beyond the novel, nonfunctional ornamental features visually represented by the claimed drawings, *Elmer*, 67 F.3d at 1577, or that fails to encompass the claimed ornamental features of the design as a whole. *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006). The district court's meticulous and accurate description of Figures 1 through 5 of each of Calmar's patents-in-suit did not constitute error. The district court's claim analysis demonstrated the proper consideration of the claimed designs as a whole.

*Arminak & Associates, Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1321 (Fed. Cir. 2007) ("*Arminak II*"); *accord Sofpool, LLC v. Intex Recreation Corp.*, 2007 WL 4522331, at *4 (E.D. Tex. 2007) (Everingham, Mag.).

for the ‘599 patent:

The ornamental design for a “SLIM CASE” comprising:

1. A generally rectangular slim box with a top portion (*see* Fig. 6), a bottom portion (*see* Fig. 7), a front edge (*see* Fig. 2), a back edge (*see* Fig. 3), and two side edges (*see* Figs. 4-5).
2. A top surface that is generally flat, but angled at a slope so that it is not parallel to the bottom surface that is also generally flat (*see* Figs. 4, 6, 7).
3. Curved corners that are larger along the front edge compared to those along the back edge (*see* Figs. 1, 6, 7).
4. A curved handle opening located adjacent to the front edge (*see* Figs. 1, 6, 7).
5. A clasp assembly located along the center region of the front edge, is flush with the front edge, and contains multiple horizontal fins affixed to a rectangular-shaped piece that is bordered on each side by multiple vertical fins (*see* Figs. 2, 4, 6).
6. A hinge assembly located along the back edge, whose hinge members are decorated by fins, protrusions, and indentations (*see* Fig. 3).
7. A center piece along the perimeter of the generally rectangular slim box that protrudes outward from the edges of said box (*see* Figs 1, 2, 3, 4).

The Court’s construction represents the overall visual impression evoked from the drawings claimed in the ‘599 patent. Although the Court construes the above items as ornamental aspects of the design, the Court expresses no opinion as to whether any of these items incorporate functional elements as well. *See OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) (“Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the

patent."); *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("When there are several ways to achieve the function of an article or manufacture, the design of the article is more likely to serve a primarily ornamental purpose."); *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006) ("Whether a patented design is functional or ornamental is a question of fact.").

2. The '748 patent

Similar to the '599 patent, Dexas favors a general description and proposes the following claim construction for the '748 patent:

> The scope of the design of the claimed Clipcase, shown in Figures 1 through 7, encompasses its visual appearance as a whole, and in particular the visual impression it creates, and comprises the following:
>
> 1. An ornamental design having an overall appearance of a generally elongated rectangular thin case with a top portion joined to a bottom portion (See Exhibit 2; Figs. 1, 2, 4), and the top and bottom portions having rounded edges. See Exhibit 2; Figs. 1, 2, 4.
> 2. The surfaces of the top and bottom portions being planar and parallel to each other and devoid of any openings. See Exhibit 2; Figs. 1, 4, 6, 7.
> 3. The top and bottom portions having equal radii at each of their corners. See Exhibit 2; Figs. 1, 6, 7.
> 4. Repetitive patterns of multiple vertically positioned fins joining a horizontal fin above and below a line separating the top portion from the bottom portion on either side of a rectangular space located at one end of the top and bottom portions. See Exhibit 2; Figs. 1, 2, 6, 7.

Joint PPF Chart at 42-45.

Tung Yung argues that Dexas' proposed construction fails to describe important features that differentiate the '748 patent from the '599 patent such as: (1) the fins protruding out from the edge, instead of being recessed to leave a smooth edge, (2) the smooth and unadorned top and bottom surfaces, (3) the concentric circles that adorn the rivets, (4) the U-shaped flap overhanging the latch, and (5) the seven hinge members extending away from the hinge along the back edge. TUNG

YUNG'S BRIEF AT 12. Advancing the same argument that a detailed description is necessary, Tung Yung proposes the following claim construction for the '748 patent:

> The ornamental design for a "CLIPCASE" containing:
>
> 1. A smooth, generally rectangular box having a back edge with a single hinge, a front edge with a closing clasp, and two parallel longitudinal side edges orthogonal to the back hinge edge and front clasp edge;
> 2. A top surface that is smooth, flat, and unadorned from the front clasp edge to the back hinge edge and between the two parallel longitudinal side edges, but for the clip assembly;
> 3. A clip assembly on the top surface adjacent to the back hinged edge, with the clip assembly containing a back plate, a spring housing, a clip, and two circular rivets, each with a smaller concentric circle inside;
> 4. A back plate positioned behind the clip, visible through the clip and attached to the outside of the top surface;
> 5. The back plate further having an uninterrupted spring housing parallel to the front clasp edge, where the bottom of the spring housing is flush against the top surface;
> 6. The front clasp edge containing a clasp and two sets of fins on either side of the clasp that protrude outward from the edge and are not inset from the edge;
> 7. A clasp having two interlocking pieces, each parallel to the top and bottom surfaces, such that when locked, the clasp forms a two-sectioned rectangle having a broad, squat, U-shaped piece and a thinner trapezoidshaped piece within;
> 8. The clasp designed such that when the box is opened, the rectangle having a broad, squat, U-shaped piece is lifted above the thinner trapezoid-shaped piece within;
> 9. The clasp enclosed by two sets of three fins of equal size and length that are parallel to each other and that reach the edge of the top and bottom surfaces but do not spill over onto the top or bottom surfaces;
> 10. The clasp reaching the edge of the bottom surface but not spilling over on to the bottom surface;
> 11. A single hinge on the outside of the back hinge edge and encased by seven hinge members;
> 12. Seven hinge members with alternating upward protrusions and downward indentations, and the middle hinge member is twice as long as the other six hinge members and has two downward indentations;
> 13. A bottom surface that is smooth, flat, and unadorned from the front clasp edge to the back hinge edge and between the two parallel longitudinal side edges;
> 14. The bottom surface where on the front clasp edge, two sets of three fins protrude outward from the front clasp edge and spill over slightly onto the

back surface but where the clasp does not spill over onto the back surface;

15. The bottom surface where on the back hinge edge, the hinge as well as the seven hinge members are visible; *and*
16. Two parallel longitudinal side edges where the fins outward from the front clasp edge are visible.

Joint PPF Chart at 49-51.

For the same reasons as the '599 patent above, the Court rejects both of the parties' proposed claim constructions and hereby adopts the following claim construction for the '748 patent:

The ornamental design for a "CLIPCASE" comprising:

1. A generally rectangular slim box with a top portion (*see* Fig. 6), a bottom portion (*see* Fig. 7), a front edge (*see* Fig. 2), a back edge (*see* Fig. 3), and two side edges (*see* Figs. 4-5).
2. A top surface that is generally flat and parallel to the bottom surface that is also generally flat (*see* Figs. 4, 6, 7).
3. Four curved corners identical in curvature, size, and shape (*see* Figs. 1, 6, 7).
4. A clip assembly located on the top surface and adjacent to the back edge, with a visible back plate, spring housing, clip, and two circular rivets (*see* Figs. 1, 6).
5. A clasp assembly located along the center region of the front edge, containing a U-shaped piece and a trapezoidal-shaped piece, that are bordered on each side by multiple vertical fins (*see* Figs. 1, 2).
6. A hinge assembly located along the back edge, whose hinge members are decorated by protrusions and indentations (*see* Fig. 3).
7. Along each of the four edges that form the generally rectangular slim box, the top and bottom portions are curved (*see* Figs. 1, 2, 3, 4).

Again, the Court's construction represents the overall visual impression evoked from the

drawings claimed in the '748 patent. Although the Court construes the above items as ornamental aspects of the design, the Court expresses no opinion as to whether any of these items incorporate functional elements as well. *See OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."); *see also L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("When there are several ways to achieve the function of an article or manufacture, the design of the article is more likely to serve a primarily ornamental purpose."); *PHG Techs., LLC v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006) ("Whether a patented design is functional or ornamental is a question of fact.").

B. Points of Novelty

After construction of a design patent's claims, a court is to compare the construed claims to the accused design for the purposes of determining infringement. "The comparison of the patented and accused designs involves two separate tests, both of which must be satisfied to find infringement: the 'ordinary observer' test and the 'point of novelty' test." *Arminak II*, 501 F.3d at 1320. The parties agree that the ordinary observer test is a factual determination reserved entirely for the finder of fact. "In a separate and distinct inquiry, the point of novelty test requires proof that the accused design appropriated the novelty which distinguishes the patented design from the prior art. Both the ordinary observer test and point of novelty test are factual inquiries." *Id.* (internal citations omitted). Despite the point of novelty test being a factual inquiry, Tung Yung contends that there needs to be a preliminary inquiry into what the points of novelty are, which Tung Yung argues is a legal question for the Court to decide.

To rationalize its argument, Tung Yung begins with the observation that claim construction and the determination of proper claim scope are legal inquiries. TUNG YUNG'S BRIEF AT 2-3 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*) (*Markman I*); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)). Tung Yung goes on to state that under the point of novelty test, "the scope of a design patent claim necessarily depends upon what the points of novelty are. Thus the court must determine the claim's entire scope (including points of novelty) before submitting the case to a jury." TUNG YUNG BRIEF AT 4 (citing *Arminak II*, 501 F.3d at 1324; *O2 Micro*, _ F.3d _, 2008 U.S. App. Lexis 7053). Although Tung Yung cites to *Arminak II* and *O2 Micro*, the Court does not find that either of these Federal Circuit decisions have held that points of novelty impact a design patent's claim scope or that points of novelty should be construed by the Court.

As previously mentioned, the court in *Arminak II* reviewed the district court's application of the point of novelty test. The district court applied the test in the context of a summary judgment motion, and considered whether any reasonable jury could find that the accused design appropriated two points of novelty that were proposed by the plaintiff. The Federal Circuit agreed with the district court's finding that appropriation did not occur. *Arminak II*, 501 F.3d at 1327 ("Our conclusion is that Arminak's AA Trigger shroud does not appropriate the two points of novelty from the prior art as Calmar contends. We agree with the district court that no reasonable jury could find that Calmar's points of novelty exist in Arminak's AA Trigger shroud.").[4] In no way did the Federal Circuit

---

[4] Tung Yung also cites to several other cases as examples of courts that have made a determination with respect to points of novelty. *Lawman Armor Corp. v. Winner Int'l, LLC*, 437 F.3d 1383 (Fed. Cir. 2006) (*Lawman Armor I*); *Lawman Armor Corp. v. Winner Int'l, LLC*, 449 F.3d 1190, 1192 (Fed. Cir. 2006) (*Lawman Armor II*); *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113 (Fed. Cir. 1998). Upon closer inspection, however, the district court in *Lawman I & II* considered the patentee's proposed points of novelty in the context of a summary judgment motion and in a manner analogous to that of *Arminak II*. *Lawman I*, 437 F.3d at 1384, 1386 ("The district

suggest that a design patent's claim scope depends upon the identified points of novelty.[5]

Similarly, the Court does not find any support in *O2 Micro* for Tung Yung's assertions. Tung Yung does not provide a pinpoint cite to the case and must therefore be citing *O2 Mirco*'s general proposition. With respect to claim construction, it generally held, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro*, 521 F.3d at 1362. However, *O2 Micro* is a utility patent case and not a design patent case. The Federal Circuit did not extend its holding to design patents or to points of novelty, and the Court declines Tung Yung's invitation to do so.

Moreover, the Federal Circuit has previously described the determination of points of novelty as a factual determination:

> To establish the points of novelty in a design patent infringement action, we hold that the patentee must introduce into evidence, at a minimum, the design patent at issue, its prosecution history, and the relevant prior art references cited in the prosecution history; and must present, in some form, its contentions as to points of novelty. The contentions may be made in any appropriate way, such as in proposed findings of fact. The fact finder generally will be able to determine the points of novelty that distinguish the design patent from the prior art by comparing the design patent with the cited prior art references, aided by any written statements of the applicant and examiner in the prosecution history. This standard is consistent with this court's previous decisions in *Goodyear* and *Litton*. A patentee may seek to present additional evidence, such as expert testimony, to assist the fact finder in understanding its contentions pertaining to the points of novelty, and in some cases presenting that evidence may be advisable. We hold only that when the points of novelty can be discerned from the patent, its prosecution history, the cited prior art, and the patentee's contentions, any additional evidence, such as expert testimony, is

---

court granted Winner summary judgment of non-infringement. The court held that 'Lawman's proposed points of novelty are found in the prior art' and thus that 'Lawman has failed to create a material issue of fact regarding the point of novelty test.' . . . The district court's summary judgment of non-infringement is Affirmed."). In *Goodyear Tire*, the district court ruled on points of novelty in the context of a bench trial.

[5] As previously discussed, the court did comment that when applying the point of novelty test, "[w]here the art in the field of a particular design is crowded, we must construe the range of equivalents narrowly." *Arminak II*, 501 F.3d at 1324 (citing *Litton*, 728 F.2d at 1444).

> not necessary to establish the points of novelty.
>
> The determination of the points of novelty in a design patent infringement case does not place an undue burden on the court. A determination of the differences between the patented design and the prior art is not especially different from the factual determinations that district courts routinely undertake on other issues, such as obviousness. *See Litton*, 728 F.2d at 1444 (basing its determination of the points of novelty largely on its earlier analysis of obviousness under 35 U.S.C. § 103).

*Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1384 (Fed. Cir. 2004). Other courts have specifically held that the determination of points of novelty is a fact issue. *See Lamps Plus, Inc. v. Dolan*, 2003 WL 22435702, at *4 (N.D. Tex. Aug. 26, 2003) ("Because determining what distinguishes a patented design from the prior art is and has historically been an issue for the jury, the issue of what constitutes a point or points of novelty of a design patent falls into the realm of fact issues for the jury to decide. . . . Rather, the claim construction is a description of the design patent sufficient to assist the jury in understanding the legal effect of the patented design."); *see also Minka Lighting, Inc. v. Craftmade Int'l., Inc.*, 2001 WL 1012685, at *24-25 (N.D. Tex. Aug. 20, 2001); *accord Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 47 U.S.P.Q.2d 1843, 1847 (E.D. Va. June 2, 1998).[6] The Court therefore declines to identify the points of novelty of the '599 patent or the '748 patent as part of its claim construction opinion.

In its final argument regarding points of novelty, Tung Yung asserts that Dexas waived any ability to object to a legal determination of the points of novelty. Tung Yung contends that an agreement had been reached at the Scheduling Conference whereby the Court would identify the

---

[6] Tung Yung argues that *Black & Decker* is distinguishable from the present case because the court there "preferred not to resolve 'a battle of the experts [which would] force the Court to make credibility determinations' during claim construction." TUNG YUNG'S BRIEF AT 3 (DOC. NO. 76). However, in discussing whether points of novelty should be a question of fact or law, the *Black & Decker* court did not consider whether expert testimony should affect its analysis; it only considered the presence of expert testimony to evaluate whether certain functional elements should be a legal or factual determination. *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 47 U.S.P.Q.2d 1843, 1847 (E.D. Va. June 2, 1998) ("The inquiry [for points of novelty] is what separates that design as a whole from the prior art. The Court agrees that this inquiry is a question of fact for the jury.").

points of novelty, and even if Dexas had not agreed to this procedure, it failed to raise timely objections pursuant to Federal Rules of Civil Procedure 46 and 72(b), and Rule 4 of Appendix B to the Local Rules for the Eastern District of Texas. TUNG YUNG'S SUPP. BRIEF AT 3. Dexas responds that it did not consent to a legal determination of the points of novelty and that none of the rules Tung Yung cites should result in a waiver. DEXAS' RESP. TO SUPP. BRIEF AT 4-6 (DOC. NO. 108).

Having reviewed the transcript of the Scheduling Conference held on October 24, 2007, the Court does not find that a clear agreement had been reached whereby the Court would identify the points of novelty as a legal inquiry. *See* Transcript of Oct. 24, 2007 Scheduling Conference at 11:3-13 (Doc. No. 109); *see also* Transcript of Oct. 24, 2007 Scheduling Conference at 19:8-21:9 (discussing whether the Court should determine the points of novelty and concluding that the parties should brief the issue).

Tung Yung's arguments that Dexas failed to raise timely objections are also without merit. Rule 46 provides that an objection to a ruling or order is necessary.[7] As there has been no prior ruling from the Court in this case regarding the proper resolution of points of novelty, Rule 46 is not applicable. Rule 72(b) is similarly inapplicable as it is directed at the ten (10) day objection period for reports and recommendations issued by magistrate judges. Finally, Rule 4 of Appendix B to the Local Rules is also inapplicable as it is directed at objections and appeals of orders, reports and recommendations, and judgments. Again, no such order or recommendation has been previously rendered for the points of novelty issue. Accordingly, Dexas has not waived its ability to object to

[7] Fed. R. Civ. P. 46 provides:
A formal exception to a ruling or order is unnecessary. When the ruling or order is requested or made, a party need only state the action that it wants the court to take or objects to, along with the grounds for the request or objection. Failing to object does not prejudice a party who had no opportunity to do so when the ruling or order was made.

a legal determination of the points of novelty.

C. Functional Elements

It is well established that a "design patent protects the non-functional aspects of an ornamental design as shown in a patent." *KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993). A design feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 (1982)). "Whether a patented design is functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006); *see also Sofpool, LLC v. Intex Recreation Corp.*, 2007 WL 4522331, *2 (E.D. Tex. Dec. 19, 2007) (Everingham, Mag.) ("It is appropriate to defer functionality determinations to trial, when the court's construction can be further limited based on the jury's findings in this regard."); *Colgate-Palmolive Co. v. Ranir, L.L.C.*, 2007 WL 2225888, at *3 (D. Del. July 31, 2007) (declining to identify which design patent features are functional in the context of a claim construction opinion).

Tung Yung does not appear to dispute that functionality determinations are a question of fact. Nonetheless, Tung Yung asks the Court to adopt its identification of functional features, arguing that they are unopposed. *See* TUNG YUNG'S BRIEF AT 11, 14 & SUPP. BRIEF AT 8-9. Dexas responds that it does contest the functional elements proposed by Tung Yung, and states, "given the dispute between the parties regarding the functionality of various elements of both the '599 Patent and the '748 Patent, Dexas requests that this Court follow the direction of *Sofpool*, and defer consideration of the functional elements of both patents until trial." DEXAS' REPLY BRIEF AT 11-12 (DOC. NO. 83). With an ongoing dispute over what constitutes functional elements, and the issue being a question

of fact, the Court declines to adopt the functional elements proposed by Tung Yung as a part of this claim construction opinion.

## IV. CONCLUSION

The Court hereby adopts the above claim constructions for the '599 patent and the '748 patent. As discussed above, the Court declines to identify the points of novelty of each patent, and further declines to identify the functional elements of each patent.

The parties have represented to the Court that the Federal Circuit has granted a petition for rehearing *en banc* in the design patent case, *Egyptian Goddess, Inc. v. Swisa, Inc.*, 256 Fed. Appx. 357 (Fed. Cir. Nov. 26, 2007), which will address several issues in design patent law that may affect the legal standards relied upon in this claim construction opinion. Accordingly, upon the Federal Circuit's ruling in *Egyptian Goddess*, the parties may file motions for reconsideration of this opinion if the Federal Circuit's ruling provides a reasonable basis for doing so.

**So ORDERED and SIGNED this 24th day of June, 2008.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE